May I proceed? Florence Brummer on behalf of Rosenquist and Associates. We're from Phoenix and we're representing appellant Wendell Nash. The crux of this case lies in the specific intent requirement of first-degree murder. In this case my client Wendell Nash was convicted of first-degree murder. The second issue is closely tied into it which involves an ineffective assistance of counsel claim where his counsel at trial, that was not us, did not properly and timely present notice that there was going to be an expert witness on the issue of specific intent. Going back to the specific intent issue is that this was a case that involved a victim Cynthia Scroggins who was stabbed and murdered at a Indian Reservation. And that's where the jurisdiction in this case lies is that it was on an Indian Reservation and the defendants, my client and a co-defendant Terry Acton, were Native Americans. This is a case where there was no evidence presented and all the evidence in this case was presented by the U.S. attorney where it did not show that there was specific intent. And these were witnesses that testified and called by the government and to summarize their testimony Before you do that counsel, wasn't there evidence that Nash planned this murder prior to the drinking spree the night it happened? No there was not, your honor. There was He didn't talk to people, friends, and tell them that he planned to get rid of her? No, he said that he didn't like her, which I think is much different Let's look at the testimony. I think it's more than I didn't like her. Nash had told the officers after he was arrested that he wanted to hurt Irving and it didn't matter if she died. He said, supposedly he told someone, Sanders the night before, that he blamed her for the murder of Ray Ray and then he said that she had to be beat down for knowing who beat down Raymond. So it seems to me that that very specific evidence of premeditation rises much more than I just didn't like her, doesn't it? Those statements, that is correct, your honor. But in this case although he made statements that he wanted to hurt her and he didn't care about her it still doesn't rise to the level of what happened down at the lake that demonstrated that there was specific intent in that case. And one of the things that is very important is that he and most everybody else who was at that lake was highly intoxicated and most of them were also using methamphetamine. And from the statements that were presented by the witnesses there was evidence that there wasn't specific intent. For example, there was a witness named Sanders and he testified that a fight between the victim and Nash happened all of a sudden. It just popped up. There was a second witness, Florine Thompson, also known as Ms. Kay many people in this case had nicknames that were used throughout the case. That witness testified that she didn't remember if she did drugs that day and asked on a level of one to ten how drunk she was one being sober and ten being passing out drunk. She was a level eight to nine. Ms. Thompson was also beat up by the victim that day of the incident. And Ms. Thompson passed out at the lake and her mind kept going blank. There was another witness who testified... Could you link that up under the standard of review? What does that have to do with Nash's specific intent? Well, it's demonstrating that... That somebody else was high on Nash? No, no, no. That everybody there, including Nash, was highly intoxicated. People didn't know what was going on. There was violence that the victim inflicted on other people, too. It was out of control. Was there a jury instruction on intoxication? There was, Your Honor. There was, Your Honor. There was the standard Ninth Circuit-approved intoxication instruction? Yes. Yes. Don't we presume that the jury listened to that instruction and followed it? Of course you do. But in this case, there's a standard of whether the jury was reasonable. And based on the evidence that was presented... And the evidence, which kind of brings me into my second issue, the evidence that was not presented, which demonstrates that the jury was not reasonable and that the jury did not have the proper evidence in front of them. Ordinarily, we don't consider ineffective assistance of counsel claims on direct review. Why should we here? You're absolutely right. Ordinarily, a panel will not consider that. But this is a case where... And the rationale behind not considering that on a direct review is that most of the time, when there's an ineffective assistance of counsel claim, that claim cannot be advanced without outside facts. A lot of times, a person will say... You'll have a defendant who'll say, I gave my attorney a list of 50 witnesses that were alibi witnesses, and he didn't call them. That's outside the record. In this case, we actually have evidence on the record regarding the ineffective assistance of counsel. And specifically, what had happened was, as you can tell from the first argument, the crux of this case was the specific intent. And in this case, two weeks before trial, the eve of trial, Nash's counsel submits a notice of expert witness. A notice of expert witness stating that an expert witness would be called to testify regarding whether there was specific intent based on the intoxication. And it was too late at that point. Do we know from this record why he didn't present that notice until two weeks before? No. It seems to me that's why it might be helpful to have a better record. It might be helpful for Mr. Nash. One option could be that they had tried a hundred witnesses and finally they found the expert. The other option could be that he just had plain and confident counsel and the guy never went out and looked until two weeks before. So it seems to me that Mr. Nash would be better off and the court would be better off if we had a record that tells us why we're in this circumstance. Well, I don't think we need to go that far. It's, on its face, ineffective assistance of counsel. It's too little, too late. Why would it be ineffective assistance of counsel if his lawyer had tried and tried and tried and every expert says, I won't testify, I won't testify, this isn't a good case. And finally he found someone to testify. I mean, that doesn't seem to me to be that it would rise to the level of ineffective assistance of counsel. Well, his counsel should have explained that to the court that he was having a problem. He said he just submits a late notice and when the state objects, oh well, I guess we don't have a witness now. The counsel doesn't make any further record about it. But we don't know because we don't have a record from the counsel at this juncture, right? That's correct. Aren't your two contentions in tension with each other? In a sense, you have to show not only ineffective assistance of counsel but that it prejudiced the defendant in order to survive on an ineffective assistance of counsel claim. Now, your first argument is that this record is plain. There's not enough evidence there. To win on your second, you have to say, no, in fact, this would have made the difference. Yes, there is definitely prejudice shown. And we have a co-defendant in this case who received this second degree murder charge and received a sentence of about 235 months as opposed to Mr. Nash who receives a life sentence because this expert testimony was not presented. So there's definitely prejudice in this case. Let me stop you for just a second and gather your thoughts. Where are we on time? I have about a minute and 20 seconds left. May I reserve that for rebuttal? Ordinarily, when we're in San Francisco, there's a big clock in front that even a judge can read. But she has about a minute, ma'am. You can reserve it. All right, I reserve it. Thank you. And I presume the government wants to be heard after both appellants. Okay. Counsel? Good morning, Your Honors. My name is Stephen Konkel. I represented Terry Acton at trial and I represented as well on the appeal. Your Honors, the essence of Mr. Acton's appeal is quite simple. During the course of the trial in this case, the government presented statements from both Mr. Acton and Mr. Nash. Mr. Nash's statements implicated Mr. Acton. And they directly tied Mr. Acton to certain facts and events that occurred during this murder. It's a classic Bruton problem. Very much so, Your Honor. And in this case, despite the government's efforts to redact those statements, in essence what happened was the government's redactions created a compounding error, if you will. The government even went so far as to redact statements of third-party witnesses and another individual who was implicated in the murder of Jeremiah Johnson. By so doing, by redacting, for example, one of the witnesses was a man named David Bobby Sanders. Mr. Nash implicated Mr. Sanders at one point in grabbing a knife and going down to the lake and stabbing Ms. Scroggins. The lake where this occurred, where the murder occurred, there was some distance between where the people were at the lake partying near their cars and down where Ms. Scroggins was found at lakeside. So the problem you described there is that the word someone, the redaction there, could have induced the jury to think it was your client, when in fact, if you wipe away the redaction, it was someone else. Is that right? Do I have it right? Yes, that's exactly right. Let me ask you this question. On cross-examination, did you ask the law enforcement officer whether the use of the word someone in that instance referred to your client? Your Honor, that was the problem. Can I have a yes or no first?  And did not ask that question? That's correct. And the problem with that, Your Honor, is a very simple one. Throughout Mr. Nash's statements where he referred to Mr. Acton, Mr. Acton now becomes someone. We also have other third parties who become someone. And in the confused accounts that were given by the witnesses who testified, that would be Mr. Sanders, Ms. Nosy, and Ms. Thompson, through the morass of that testimony, if you will, where people were intoxicated, some people walked away, some people turned away while this murder took place, there was much confusion as to who was where, who did what, and in what order. But there was nothing to prevent you from asking the law enforcement officer on that precise issue whether someone meant someone other than your client. By doing that, Your Honor, the perverse effect would have been to call further attention to the references to Mr. Acton as being the other someone throughout Mr. Nash's statements. In other words, if I asked an officer, well, isn't this someone in this instant referring to Mr. Sanders, well, now I've just clarified for the jury that this someone is Mr. Sanders, but the other someone is going to be Mr. Acton. Fair point. But weren't there five other people out there? There were seven people in total, Your Honor. And we subtract the victim. Subtract the victim, there were six. Three testified for the government, one was unapprehended and was only recently caught, and I know it's not in the record, but that's Mr. Johnson. Don't refer to him. And then there was Mr. Acton and Mr. Nash who were standing trial jointly at the same time. You asked for a separate trial? Your Honor, and I knew the court would ask this, and it's somewhat of the million dollar question, but as we came down to the eve of trial with plea negotiations going on and so forth... Did we start with a yes or no? Did I? No. No, Your Honor, I didn't. Simply put, because... What's the consequence of failing to do so? If you don't ask for a seventh before trial, it's not preserved for appeal, Your Honor, obviously. When you're faced with a Bruton problem, it happens a lot in criminal investigations. The trial court is presented with basically three alternatives. One is it can order separate trials and do away with redaction. That commonly happens where the speaker of the statement is not from law enforcement. The second thing you can do is redact, which was done here. The third thing you can do, which is done sometimes, is done in a very famous trial here in Arizona. You can have two juries and move them in and out when the statements are made. But the choice here was basically between severance and redaction, and you didn't ask for the alternative. That's correct. Why? Mr. Nash confessed more than Mr. Acton in simple, short terms. And I have an individual whose confessions, if you will, Mr. Acton's, were somewhat ambiguous, to say the least. I mean, he pretended to say it. So you made a tactical decision that this was the best alternative. That's correct, Your Honor. And what would have been the solution, the ideal solution in your view in this trial? To have the references to Mr. Acton given by Mr. Nash redacted in toto, entirely? Not mentioned. Not mentioned. Just totally... Out. And then the other ones, would someone still be in there or would you insert certain names some of the time? Take, for example, the instance where they said Mr. Nash had indicated Sanders had picked up the knife and stabbed him. In my view, that should have come out at trial that way. And let the government explain away why Mr. Sanders is testifying before them when he'd been implicated by Mr. Nash. Well, short of having Mr. Nash's statements all gone, did you ask for any sort of middle ground where there would be kind of a Swiss cheese redaction in effect? Someone would be in many of them but then you would have the name listed in other of the statements? Did you go through statement by statement and make an argument? Your Honor, I believe in the extra record that I provided to the court, specifically, there was mention made of how this compounded the error in a gray type of Maryland versus... I understand, but let's go back to the question. Did you ask the court for a lesser degree of two evils remedy? In other words, naming these other individuals in certain statements but leaving someone in other statements? Yes. Redaction light. Yes. Redaction light. Yes, I did endeavor to do that. Did you go through, for example, the Acton interview and do that?  I attempted to have the court, the district court, the trial judge, understand that, yes, where we were putting out, putting in these statements or using that type of redaction, that what was happening was that I was not only having a confrontation problem but a cross-examination problem, as Judge Hawkins just noted. I don't want to bring out that this someone is Mr. Sanders without further compounding the error and pointing the finger at Mr. Acton simultaneously that he's the other someone in other instances. So redaction light, if you will, has its problems as well. You did not offer redaction light, I think, was the point of the question. You're explaining your tactical choices but I think what we want to know is did you do it? Did I offer redaction light? I offered full redaction, yes, that's what I tried to do. Not full redaction but you didn't offer a middle ground of what we're calling redaction light. No, if that's how the court would characterize it, the answer would be no. My other question is when we read the Bruton cases about excluding the testimony altogether, which I understand of course would have been the best alternative in your view, usually those statements actually implicate the defendant directly in some way. And as I read through the various interviews and statements here, I don't see that direct implication so it might help if you, are there one or two or three of these that you think are the most egregious that we might focus on? I believe, Your Honor, when Mr. Nash from his statement, he said he handed the knife to someone else and that he shanked her and finished her off. If you put that into context with the other witnesses' statements and if you look at Ms. Nosy's testimony in particular, she said one of them came back and she was referring to either Acton or Johnson and she was never clear on which one it was despite the government's efforts to impeach her. That statement alone, the jury could have inferred was Mr. Acton doing it because coupled with other admissions Mr. Acton made as to running down there, the jury could have, and I believe they did, infer that this was Mr. Acton who had stabbed Ms. Scroggins last. And that evidence, based on the confusing, intoxicated product of the other three witnesses who were quite clear they never went down to that lake shore, they couldn't testify to what happened down there in the dark. That statement in and of itself was one of the statements of Mr. Nash to put Mr. Acton at the lake and implicated him directly in stabbing Ms. Scroggins. What's his time? I have a minute 48, Your Honor. Did you want to save anything, Your Honor? Not particularly. Okay. I think I can make my points in ten minutes. That's fine. It's your time. Your Honor, at other points in the case as well, and I know the government... On the last comment you just made, it's correct, isn't it, that Sanders testified in an unredacted way that he saw your knife, that he saw Mr. Nash's request immediately before the victim went down to the lake and whoever it was ended her life? That's correct, Your Honor, but part of that was an objection that was made at trial, and I believe it's footnoted in my brief, that Mr. Acton stated in his confession or his statement to the officers days later that he only    holding a wine bottle. If you were to testify in pre-trial, you're not going to know which way that objection is going to go. The facts of record were at this precise point in time, Nash was unarmed? That's correct, but again, it's somewhat confusing. It's an objection to Mr. Acton stabbing Mr. Scroggins in the car with a broken wine bottle. That was really the one damaging statement, if you will, Your Honor, that Mr. Acton had handed the knife over, although it was quite confusing because other times Mr. Sanders said he didn't see Mr. Acton with a knife, and at other points, one of the other witnesses indicated Mr. Johnson had the knife, so it was quite confusing. Okay, good timing. Thank you for your argument. We'll hear from the government at this point. Thank you, Your Honor. Ann Shale, on behalf of the United States, I'm an assistant United States attorney for the District of Arizona. If the court would prefer, I'd address the issue of first-degree meditation in this case. As the courts already noted, there was evidence at trial that the defendant and everyone else present were drinking heavily, using drugs. The defendant requested and received a jury instruction on intoxication, and the jury considered that and rejected that argument, convicting the defendant of first-degree murder. This court should uphold that reasonable jury verdict unless there's something looking at the light most favorable to the government, and we ask that the court uphold that verdict. With regard to ineffective assistance of counsel, the court's correct in that it normally reviews those on 2255s or habeas records. In this case, the court can consider it in the government's position because the court needs to make the determination of whether or not the defendant suffered prejudice. If the court finds on this record the defendant did not suffer prejudice, they can rule on the ineffective assistance of counsel without going to the claim of the defendant's defense attorney's conduct or his effectiveness at trial. On the merits of the ineffective assistance claim, can you think of a reasonable strategic choice to miss a deadline? Can I? I don't know. I don't know what his reason was. He provided notice two weeks before trial, and as of the day of trial, he had never provided the government with a report from an expert, or I don't believe he made a proffer, a specific proffer of what the expert would testify about. Right. No, I understand the choice on whether to put on  not, but when we look at the question of strategy, we have to say, was the strategy reasonable? And I can't think of a reasonable strategic choice to miss a deadline. I think in this case, the expert testimony regarding intoxication was unnecessary. I don't think the effect of intoxication is outside the purview of the jury, that the jury can make a determination if intoxication affected the defendant's ability to premeditate this murder, and there   premeditation, of discussions before they got to the lake, of asking people to beat down Cynthia before they got to the lake, and even the court did not have any evidence of premeditation. The jury's conduct at the lake, the testimony at trial was that this was a fairly long and lengthy assault on Cynthia Scroggins, that it took some time, and I think the jury can infer premeditation is simply in the length of the murder and the assault on her. So the court can make a determination with regard to prejudice, and the government's position is that the defendant is not prejudiced because the jury can make that determination. The jury did make that determination that intoxication was not sufficient to find, and the jury found that there was premeditation in this case. Unless there are further questions on that, I'd like to address the Bruton issues. I don't see any. Go right ahead. In this case, the government introduced confessions of both defendant Nash and Acton at the time. They were oral confessions, not written confessions. The court has those confessions specifically defendant Nash's confessions in the excerpts of record at pages 21 and 25. The italicized portions of that, of those documents indicate what was redacted for the court's benefit. Opposing counsel has described his tactical choices. You knew you might have a Bruton problem. That's classic in this type of case. Why didn't you seek a separate trial? I don't believe that the confessions were I believe that the confessions could be redacted sufficiently to allow a joint trial. And as the Supreme Court held in Richardson v. Marsh, that joint trials are appropriate, that they're encouraged in cases when an appropriate redaction can occur. The government believes that this redaction was sufficient. In fact, defense argues that because the word someone was replaced for other individuals except for the defendant, including the defendant, that it somehow implicated the defendant in conduct that wasn't his, the government's position is that's simply not so, that adding the someone to other conduct made it even more unclear what the defendant, Nash, was talking about in his confession, that he wasn't particularly identifying any of the, and the evidence at trial was there were three individuals that were actively involved in the murder. It was the defendant, act and defendant Nash, and Jeremiah Johnson. So based on a reading of defendant Nash's confession that has been redacted, it is entirely unclear who did what other than defendant Nash's own conduct. But isn't, you know, I read this and the word someone or someone else or somebody in one of the interviews appears about seven or eight times and about four times in the other one. And you have a series of other people who are mentioned, you know, Cynthia and Pokey Dot and some of these other people are mentioned. If you're down to three people, one of them is Mr. Acton, one of them is Mr. Nash, Nash making the statement. I think the clear implication of someone else is Mr. Acton. No, I don't think that. It might have been confusing out there, but you yourself narrowed it down to three people and one of those is making the statement. One of them is Mr. Acton. For example, in the 12-17, December 17th, 02 statement, defendant Nash says that the night before someone wanted to kill Cynthia because of what had happened to Nash's friend Raymond or something like  The other statement by Jolene Nozick was that defendant Nash was the one that was talking about hurting Cynthia because of Ray Ray's death. The statement appears that Nash was trying to blame someone else, but the evidence at trial really showed that it was defendant Nash that made that statement. Additionally, there were statements that it had started in the back of the trial that Jeremiah Johnson was the other person in the car with Cynthia and defendant Nash, not defendant Acton. There are other statements with regard to that. Specifically, the statements that Mr. Kunkel brought up about the last person down at the lake having said that she's gone or we killed her. The testimony at trial was that both defendant Acton and defendant Jeremiah or, I'm sorry, Jeremiah Johnson were at the lake. They returned together. One of them, Jolene knows he testified, that one of them said that he had slit her throat, but she could not remember which one. So the evidence that was brought out at trial did not clearly implicate the defendant in some of this conduct and clearly implicated other people in the conduct. So the someone based on defendant Nash's confession could not be clearly identified. And again, the court read the... Could he not be more clearly identified in light of the other evidence that was presented? I mean, that's really the question, not standing alone could he be identified, but in conjunction with the other evidence that was corroborated? For some conduct, he could have been identified, but what my reading of the case law is that you look at the confession as a whole. If the confession as a whole clearly identifies the defendant, even with the redactions, then it could be that the other evidence removed the ambiguities of the statement. And if that is true, then the other evidence of trial that may or may not have been disputed may well have allowed the jury to draw some impermissible inferences from the prudent evidence. Well, I would disagree, at least in part, because I know there was at least one statement where a witness said, I don't know, I don't remember who said it. So what is your argument? Do you look at the four multiple inferences you could draw from the document, none of which were particularly good for me, and it forced me into some tactical choices I didn't want to make? Your argument in answering Judge McKeon's question seems to be that while other evidence clarified who it was, which then seems to me to draw you right back into the plastic brood in here. Well, I think that because there were so many people at the lake, based on the confession and the redactions in the confession, you could not tell who Defendant Nash was talking about, except when he was saying that it could use the Defendant's confession only against the Defendant that was confessing. His statement may have confirmed some of the information, but, again, the jury was instructed that Nash's statement would only be used against Nash. Let me ask a hypothetical to clarify where I'm headed on this. In your view, let's assume we have a document that is arguably subject to prudent error, but on the space probably falls on the side of no error. If there's undisputed evidence that comes in in the rest of the trial that would clearly allow a jury to eliminate every other person on that document except for the Defendant, do you have any  that's not error? Well, it's unclear based on my reading of the cases. My reading of the cases, especially based on Richardson v. Marsh, is that that's not error. Isn't the ordinary prudent redaction remedy done where the statement says we and the redaction is to I? That's the very classic prudent redaction, isn't it? Yes. And you couldn't do that here? The statements were, I don't think, didn't lend themselves to that. So why not separate trials? I didn't think that it was necessary. It was never asked for by the defense. The judge, we had a discussion about that and I believe the judge appropriately found that both defendants could be tried together based on this evidence. So let's go about it a different way. What's the evidence that convicts active? That convicts active. In this case, that's my next argument, that if the court finds there's prudent violation, the government believes that it's harmless beyond a reasonable doubt because there was sufficient evidence or evidence that the defendant participated in this murder. We had his own statement that he knew something was going to happen to Cynthia based on discussions with others in the group earlier in the day, that he admitted finding a knife on the ground and handing it and in his statement it was to someone else. His statement was also that he   to the lake. That's correct. Acton said he just pretended to stab her. He admitted going down to the lake where Cynthia was lying injured and pretended to stab her. He admitted coming back to the car and taking his knife out of the window. There was testimony at trial that defendant was the one that threw the knife out of the window. In fact, the day when he was being interviewed by law enforcement he took law enforcement out to the scene where the knife was  He admitted going down to the lake several times with Jeremiah Johnson. The defendant was looking for something on the ground and picked it up and ran down to the lake. The defendant came up from the lake and took his shoes off and went down to the lake. The defendant and Jeremiah Johnson returned from the lake and one of the two indicated they had slit Cynthia's throat. The physical evidence was that Cynthia had a knife incision on her neck that was consistent with her confession. The jury was instructed not to use defendant Nash's confession against defendant Acton. The classic case that I see is a bank robbery where there are two people that enter the bank and two people are identified and they each make confessions against each other. In this case there were so many people at the lake that when the term someone is included in the statements it could mean a whole host of people that are at that lake. This case is a good example of when these statements should be allowed at trial. Because it can be redacted sufficiently not to directly implicate defendant Acton but could implicate a whole host of other people. I think the confession was critical to defendant Nash's case. It was his statement about what had happened on that day. If there are no other questions I will submit them. I think we have your argument in hand. Thank you. Counsel you have some time for rebuttal. Unless you have a minute in hand. The government has conceded that there would be no tactical advantage to submitting a late expert disclosure. I think she said she just didn't know. All right. But I think the court would be aware there would be no tactical decision to do that. It precludes your expert basically. Which is very different than a case that judge Hawkins and judge McEwen sat on this year, which was the Vasquez case where a defendant was complaining because a witness was not called and there was actually a tactical decision behind it. This is much different. This was the crux of his case, whether he was going to be convicted for first degree murder which was a specific intent crime or second degree murder which didn't have a specific intent.              court would not be able to do that. And that's why I think the court would be aware that the defense was not going to be able to do that. And so they didn't have that and it made a difference. Do you need an expert to understand the impact when witnesses tell you that they have been drinking all day and they drive to the lake and they stop at a 7-Eleven or whatever and buy, what, a case of beer or two cases of beer? And they go out to the lake and they're drinking and they're using, do you need an expert to tell you what the impact of that is? Well, the expert was specifically, if you can  intent, and because it's such a complicated issue. No expert would be allowed at a trial to tell a jury whether in her opinion the defendant could have specific intent, right? I'm not sure. Right? That's the ultimate legal question. Well, maybe not if the specific defendant would be, but what it could do to someone's intent and then the jury could tie that in with the other witnesses. But doesn't the case really rise or fall on the statements made before the party? I mean, the question really is on the first part. Was that sufficient to provide a reasonable juror the basis on which to find a verdict of guilty? If that fails, if your contention fails on that, doesn't the rest of your case fail? In other words, if there were reasonable evidence to show that the defendant formed specific intent before going to the party, it doesn't matter how much you drank at the party, does it? Well... You can answer that question and then you're out of time. All right. No, not necessarily. The evidence just wasn't that clear. He was angry and he had other things going on, but I don't think it was where he said, hey, I'm just going to be it. I'm going to kill her. That wasn't demonstrated. He was angry, sure, but not specific intent. Thank you. Okay. The case just argued will be submitted for decision.
judges: Hawkins, Thomas, McKeown